## BYRON DAVIS v. STATE.

No. 8976-A.   Aug. 28, 1936.
(60 Pac. [2d] 413.)

Ridings & Drennan, and Orval Grim, for plaintiff in error.

Mac Q. Williamson, Atty. Gen., and Smith C. Matson, Asst. Atty. Gen., for the State.

DAVENPORT, J.   The parties will be hereafter referred to as they appeared in the trial court.   The de-

fendant was by information charged with burglary in the second degree, and sentenced to imprisonment in the state penitentiary for two years. The record was properly saved by filing a motion for a new trial, which motion was overruled and exceptions saved, and the defendant appeals to this court.

The testimony on behalf of the state, in substance, is that the defendant in this case was in charge of the Deer Creek Elevator, located on the Frisco right of way in the town of Lamont, Okla.; the Deer Creek Elevator was located a short distance from the Spencer Grain Co.'s elevator. On the night of the 25th of August, 1934, a box car was set near the Spencer Grain Co.'s elevator; the elevator was broken into and the company's motors started, and when discovered there had been loaded, into the box car that had been set at the Spencer Grain Co.'s elevator, 187 bushel and 40 pounds of wheat, of the value of $176.41.

The evidence shows that the car set at the Spencer Grain Company's elevator was at the close of the day the afternoon before the alleged burglary had been set at the Deer Creek Elevator, and that tracks along the railroad track showed the car had been moved from the Deer Creek Elevator to the Spencer Grain Co.'s elevator and attachments connected so as to load wheat from the Spencer Grain Co.'s elevator into the box car; a ladder and wire stretchers owned by the defendant and used by the defendant in this case at the Deer Creek Elevator were found at the Spencer Grain Company, the ladder being attached to the door on the box car in which the wheat was being loaded when it was discovered the motors of the Spencer Grain Company were running and the owner called by parties to come to the elevator.

No one was found at the elevator when the parties arrived, but the doors of the elevator had been opened and the motors started, and the wheat was being loaded into the box car. The testimony further shows that the tracks along the Frisco tracks from the Deer Creek Elevator to the Spencer Grain Company, where the car was placed, were the same as the tracks made by the defendant Davis; that the shoes he was wearing had a break in the bottom where they were worn, and witnesses identified the tracks as being tracks made by the shoes worn by the defendant.

Chester Crow, who was an accomplice of the defendant, testified for the state and in detail described the moving of the car from the Deer Creek Elevator to the Spencer Grain Co.'s elevator by the defendant and himself, and states that the defendant Davis opened the doors at the Spencer Grain Company, and after the car was set and the spout fixed so that it would run the grain into the box car, and the ladder placed on the door of the car, and the wire stretchers wrapped in gunny sack and fastened to the door, started the motors, and began to load the grain in the box car, the defendant drove away telling Crow he would be back shortly; that after he had been loading the grain for some time, he saw some one coming toward the elevator, and realizing he had been discovered with the motors in the grain company running, he left the scene of the grain company elevator.

Chester Crow further stated the defendant was to give him $100 for assisting in loading this wheat. Witness Crow had worked for the Spencer Grain Company, and loaded out a car of wheat the afternoon before it was alleged this crime was committed, and had been recommended to Mrs. Spencer by the defendant Davis. Some evidence was introduced tending to show the defendant

was short in his accounts with the Deer Creek Elevator Company and that his shortage was the motive for attempting to burglarize the Spencer Grain Company and get this car of wheat out so as to cover up his shortage. The testimony shows the defendant had been working at Deer Creek Elevator for some time. This is, in substance, the testimony offered by the state.

On behalf of the defendant it is admitted he worked for the Deer Creek Elevator; that it was located near the Spencer Grain Co.'s elevator; that he recommended to Mrs. Spencer the night before the alleged burglary that night, the witness Chester Crow as a competent person to help her load the car of wheat; the defendant claims he closed the Deer Creek Elevator in the evening and went home, got his wife and baby, and drove to Deer Creek, visiting at his father's home with his brother-in-law Tom Garrett and his family the remainder of the evening, spending the night with Tom Garrett and his family, and had nothing to do with the attempted larceny of the wheat from the Spencer Grain Company; that he had nothing to do with the coopering of the car or spotting it; that he did not open the Spencer Grain Company's door, and had nothing whatever to do with it, and called his wife, his brother-in-law, and other parties as witnesses in his behalf to show he was in Deer Creek at his brother-in-law's and could not have been in Lamont.

In rebuttal the state called one or two witnesses who testified that about 11 o'clock the evening of the alleged burglary they saw the defendant Byron Davis in Tonkawa, which is several miles from Lamont, in the opposite direction from Deer Creek.

The defendant, as grounds for reversal of this case, alleges the court committed twelve errors in the trial. In his brief he discusses the fourth assignment of error, and argues that there is a variance in the proof and allegations in the information. The information charges the burglarizing of the Spencer Grain Company, and he urges that the proof shows that the elevator alleged to have been burglarized belonged to Dean Spencer and D. E. Spencer, doing business as the Spencer Grain Company, and he insists they are two different and distinct parties, arguing that the Spencer Grain Company was owned by this partnership, and that the allegations that the grain company was owned by the Spencer Grain Company is a fatal variance from the charge in the information and proof on the part of the state.

The test of fatal variances is: Was the defendant misled? Will he be protected against further proceedings? Mathews v. U. S. (C.C.A.) 15 F. (2d) 139.

Whether there is a fatal variance or duplicitous proof may be determined by inquiring whether the defendant could plead former jeopardy. Fowler v. State, 20 Okla. Cr. 410, 203 Pac. 900.

The information in this case is not a model, but after a careful consideration we hold that there is not sufficient variance between the allegations in the information and the proof to warrant this court in reversing the judgment. It is clearly shown that the defendant knew the elevator he was charged with burglarizing, and under the facts in this case if the defendant should be again charged with burglarizing the properties of D. E. Spencer, Dean Spencer, or the Spencer Grain Company, the defendant would be in a position from the record in this case to plead former jeopardy.

It is next contended by the defendant that there is no proof corroborating the witness Chester Crow as to the burglary alleged to have been committed by the defendant operating with Chester Crow. Without going into detail as to what the record shows, we hold that the fact that the car that was being loaded from the Spencer Grain Company was the car that had been spotted at the Deer Creek Elevator; that the ladder and the stretcher that were being used at the Spencer elevator were owned and used by the defendant in this case at the Deer Creek Elevator.

One or more witnesses testified positively that some of the tracks made along the rail of the Frisco siding from the Deer Creek Elevator to the Spencer Grain Company, where the car had been spotted and was being loaded, were identical with the tracks made by the defendant; that the shoes worn by the defendant were worn out or had broken soles, and the witness identified the human tracks along the Frisco tracks as being tracks made by the shoes worn by the defendant.

In Brown v. State, 52 Okla. Cr. 110, 3 Pac. (2d) 237, this court, in the second paragraph of the syllabus, said:

"Evidence corroborating an accomplice need not directly connect the defendant with the commission of the crime; it is sufficient if it tends to do so."

This court has often held that in determining whether the accomplice's testimony is sufficiently corroborated, corroborating testimony will be considered in the strongest view that such testimony will warrant. Hinkle v. State, 55 Okla. Cr. 402, 32 Pac. (2d) 96.

Considering all of the testimony and circumstances surrounding this case, we think the corroborating testimony is sufficient, and that the record clearly shows that

the defendant was a party to the burglarizing of the Spencer Grain Company, notwithstanding a number of witnesses testify he was at another and different place at the time of the burglary.

The defendant was accorded a fair trial. The court properly instructed the jury as to the law applicable to the facts.

Finding no errors in the record sufficient to warrant a reversal, the judgment of the trial court is affirmed.

EDWARDS, P. J., and DOYLE, J., concur.